IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| BENJAMIN LEE MARSHALL, SR., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SANDERSVILLE RAILROAD )<br>COMPANY, )<br>)<br>Defendant. )<br>) | CIVIL ACTION NO. 5:12-CV-425 (MTT) |

## ORDER

Before the Court is Defendant Sandersville Railroad Company's motion for summary judgment or, alternatively, partial summary judgment. (Doc. 28). For the reasons stated below, the motion is **DENIED**.

### I.   BACKGROUND

Plaintiff Benjamin Marshall and his wife Rebecca Marshall filed a Chapter 13 bankruptcy petition on August 19, 2004, in the United States Bankruptcy Court for the Middle District of Georgia. (Doc. 28-1 at 15, 22). The bankruptcy plan was confirmed on November 12, 2004. (Doc. 28-2 at 1). According to the trustee, the Marshalls never missed a plan payment and made their final payment on October 7, 2009. (Doc. 41, ¶ 4). The trustee testifies in her affidavit that on October 8, 2009, she sent a letter to Mrs. Marshall's employer, with copies to Mrs. Marshall and her attorney, notifying the employer that it was no longer necessary to make deductions from Mrs. Marshall's paycheck. (Docs. 40 at 3; 41, ¶ 4). On February 12, 2010, the bankruptcy court granted the Marshalls a discharge and closed the bankruptcy case. (Doc. 28-2 at 4-5).

On November 8, 2009, Marshall and fellow employee Jimmy Strowbridge were fouling a track on Defendant Sandersville Railroad Company's rail line. (Docs. 35 at 60:1-7, 62:12-14; 37 at 11:1-14:25; 51:21-25). Specifically, they were grinding switch points with a large rail grinder machine. (Doc. 35 at 63:20-23). Without the assistance of a tractor or other machine, Marshall and Strowbridge attempted to manually move the rail grinder by hand, carrying it on opposite ends. (Doc. 35 at 80:8-15, 84:21-85:6). In his deposition, Marshall testifies that while they were moving the machine, Strowbridge slipped on a rock, causing him to drop his end. (Doc. 35 at 80:14-15, 86:25-87:12). Marshall held on to his end, and his lower back was jerked, causing pain. (Doc. 35 at 80:12-23, 87:16-88:17). He then met with the superintendent to report his injury and submitted an accident report. (Doc. 35 at 106:13-107:3). Marshall continued to perform light tasks through the rest of 2009 before leaving the railroad company. (Doc. 35 at 112:15-19).

On October 23, 2012, Marshall filed the present lawsuit pursuant to the Federal Employers' Liability Act[1] ("FELA") based on the November 8, 2009 incident. (Doc. 1). In response to the Defendant's interrogatories, Marshall answered that he had been a party to a bankruptcy proceeding and received his bankruptcy discharge in October 2009.[2] (Doc. 28-2 at 16). However, the Defendant discovered that Marshall actually received his discharge in February 2010. As a result, the Defendant moved for summary judgment on the basis of judicial estoppel. (Doc. 28).

---

[1] 45 U.S.C. § 51 *et. seq.*

[2] Marshall's counsel also state in their respective affidavits and reiterate in the response to the motion for summary judgment that they were under the belief Marshall's bankruptcy case had been dismissed in October 2009 based on answers to questionnaires Marshall had given and their failure to check the bankruptcy docket. (Docs. 31 at 3-5; 38, ¶¶ 6-12; 39, ¶¶ 6-12).

Between the time of his alleged injury on November 8, 2009, and the close of the bankruptcy case on February 12, 2010, Marshall never amended the bankruptcy asset schedule to disclose the potential claims against the Defendant arising from the November 8 incident. (Doc. 28-1 at 22). In their affidavits, Marshall and his wife testify that they considered their obligations to the bankruptcy court to be over by October 2009 because deductions were no longer being taken from Mrs. Marshall's paycheck as no more payments needed to be made. (Docs. 40, ¶¶ 4, 6; 42, ¶¶ 4, 6). On November 24, 2014, after being alerted to the correct discharge date in the Defendant's motion, Marshall's counsel ensured that Marshall's bankruptcy case was reopened, and his asset schedule was amended. (Docs. 30-1, ¶ 4; 38, ¶ 12; 39, ¶¶ 7-12; 41, ¶ 6). The trustee was then reappointed. (Doc. 41, ¶ 6). However, the trustee testifies that she does not plan to move to modify the bankruptcy plan because all plan payments had been made before the FELA claims arose. (Doc. 41, ¶¶ 5-6).

## II. DISCUSSION

### A. Summary Judgment Standard

#### 1. Generally

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant

may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact."  *Id.* (quoting *Anderson*, 477 U.S. at 249-50).  Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2).  However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. … The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255.

### 2. Judicial Estoppel

As discussed below, judicial estoppel is the threshold inquiry in this case. Judicial estoppel is an equitable doctrine that may be invoked at the court's discretion to estop a party who has taken inconsistent positions under oath with the intent to make a mockery of the judicial system.  *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002).  Even at the summary judgment stage, district courts can make factual

findings regarding whether a party intended to make a mockery of the judicial system by taking inconsistent positions or whether a party acted inadvertently.  *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1275 (11th Cir. 2010).  A finding of inadvertence or the existence of a genuine issue of material fact regarding intent makes granting summary judgment on the basis of judicial estoppel improper.  *See Burnes*, 291 F.3d at 1286; *Ajaka v. Brooksamerica Mortg. Corp.*, 453 F.3d 1339, 1346 (11th Cir. 2006) (reversing the district court's grant of summary judgment on the basis of judicial estoppel where there was a genuine issue of fact regarding intent).  If appealed, a court's application of the doctrine is reviewed for abuse of discretion, and a court's findings regarding intent are reviewed for clear error.  *Robinson*, 595 F.3d at 1273, 1275.  It is against this backdrop that the Court first addresses whether the Defendant is entitled to summary judgment on the basis of judicial estoppel.

### B. Judicial Estoppel Analysis[3]

"The purpose of judicial estoppel is 'to protect the integrity of the judicial process by prohibiting parties from changing positions according to the exigencies of the moment.'"  *Id.* at 1273 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)).  Specifically, the doctrine prevents a party from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding."  *Id.*  The Supreme Court outlined three factors to inform a court's decision whether to invoke the doctrine: (1) "whether the party's present position is clearly inconsistent with the earlier

---

[3] The Parties only cite to cases that have applied federal law on this issue, and the court assumes, without deciding, that federal law governs.  The Court notes, however, that in diversity cases, where state law provides the rule of decision, Georgia law would likely govern.  *See Original Appalachian Artworks, Inc. v. S. Diamond Assocs., Inc.*, 44 F.3d 925, 930 (11th Cir. 1995); *Job. v. AirTran Airways, Inc.*, 2014 WL 414224, at *3 (N.D. Ga.).  The Court notes that pursuant to Georgia law, the amendment of the bankruptcy schedules would defeat judicial estoppel.  *See CSX Transp., Inc. v. Howell*, 296 Ga. App. 583, 675 (2009).

position"; (2) whether the party successfully persuaded a court to accept the first position, resulting in the perception that the court was misled when an inconsistent position is made in a later proceeding; and (3) "whether the party advancing the inconsistent position would derive an unfair advantage." *Robinson*, 595 F.3d at 1273 (citing *New Hampshire*, 532 U.S. at 750-51). The Eleventh Circuit has identified two primary factors for establishing the bar of judicial estoppel. "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Burnes*, 291 F.3d at 1285. These factors are not exhaustive. *Robinson*, 595 F.3d at 1273. The Eleventh Circuit has instructed that "[j]udicial estoppel is intended to be a flexible rule in which courts must take into account all of the circumstances of each case in making [a] determination." *Ajaka*, 453 F.3d at 1344 (citation and internal quotation marks omitted).

### 1. Whether Marshall took inconsistent positions under oath

The Defendant contends that by not amending his bankruptcy asset schedules to disclose his FELA claims, Marshall took inconsistent positions under oath that he had no FELA claims to disclose to the bankruptcy court. The Court agrees. "A debtor seeking shelter under the bankruptcy laws has a statutory duty to disclose all assets, or potential assets to the bankruptcy court." *Robinson*, 595 F.3d at 1274. The Eleventh Circuit has explicitly held that a "Chapter 13 debtor has a statutory duty to amend [his] financial schedule to reflect [his] current assets." *Id.* at 1269. This duty is a "continuing one that does not end once the forms are submitted to the bankruptcy court; rather the debtor must amend his financial statements if circumstances change" during the

pendency of the bankruptcy case.  *Burnes*, 291 F.3d at 1286; *Robinson*, 595 F.3d at 1274; *Rainey v. United Parcel Serv., Inc.*, 466 F. App'x 542, 544 (7th Cir. 2012) ("Debtors have a continuing duty to schedule newly acquired assets while the bankruptcy case is open." (citing *In re Waldron*, 536 F.3d 1239, 1244 (11th Cir. 2008))).

Here, the FELA claims qualify as assets, and these assets are property of the bankruptcy estate because they arose after the confirmation of Marshall's payment plan but before the case was closed.  *Robinson*, 595 F.3d at 1274-75; *Parker v. Wendy's Int'l, Inc.,* 365 F.3d 1268, 1272 (11th Cir. 2004); *In re Waldron*, 536 F.3d at 1243 (concluding assets acquired after confirmation of the bankruptcy plan are property of the bankruptcy estate pursuant to 11 U.S.C. § 1306(a)); *see also* 11 U.S.C. §§ 541(a)(7),[4] 1306.[5]  Accordingly, Marshall had a statutory duty to disclose these potential claims to the bankruptcy court by amending his asset schedules.  *Robinson*, 595 F.3d at 1274-75. Marshall's failure to amend his schedules represented to the bankruptcy court that he had no potential legal claims against the Defendant during the pendency of the bankruptcy case.  Therefore, Marshall took a position under oath in his bankruptcy proceeding inconsistent with his asserted claims in this case.[6]

---

[4] Section 541(a)(7) provides: "The commencement of a case under section 301, 302, or 303 of this title creates an estate.  Such estate is comprised of all the following property, wherever located and by whomever held: [a]ny interest in property that the estate acquires after the commencement of the case."

[5] Section 1306 provides:
  (a) Property of the estate includes, in addition to the property specified in section 541 of this title—
     (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first. …
  (b) Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.

[6] Marshall argues he had no duty to amend his asset schedules because at the time of Marshall's bankruptcy, a local bankruptcy rule provided that "[a]ll debtors who file for relief under Chapter 13 shall amend their schedule of assets to disclose any and all assets or income in excess of $5,000 obtained

### 2. Whether Marshall intended to make a mockery of the judicial system

The Defendant further argues that Marshall had a motive to conceal the claims because he could keep the potential proceeds from this lawsuit for himself instead of satisfying his remaining debts.  Marshall responds that there exists a genuine issue of material fact regarding intent.  When considering a party's intent for purposes of judicial estoppel, the Eleventh Circuit requires "intentional contradictions, not simple error or inadvertence."  *Robinson*, 595 F.3d at 1275 (internal quotations marks and citation omitted).  Put another way, the Eleventh Circuit "require[s] that the intent be cold manipulation and not an unthinking or confused blunder."  *Ajaka*, 453 F.3d at 1345 n.7 (internal quotation marks and citation omitted).  Intent *may* be inferred from a "debtor's failure to satisfy its statutory disclosure duty" if the debtor has knowledge of the claims and a motive to conceal them.  *Burnes*, 291 F.3d at 1287-88; *Robinson*, 595 F.3d at 1275.  This "inference is considered a factual finding by the court and held to a clearly erroneous standard."  *Robinson*, 595 F.3d at 1275.  However, the court may find the failure to disclose to be inadvertent if "the debtor either lacks knowledge of the undisclosed claims[7] or has no motive for their concealment."  *Barger v. City of Cartersville*, 348 F.3d 1289, 1296 (11th Cir. 2003) (citation and internal quotation marks omitted).  "When reviewing potential motive, the relevant inquiry is intent at the time of non-disclosure."  *Robinson*, 595 F.3d at 1276.

---

after the filing of the case and before the final payment is made to the Chapter 13 Trustee under the plan." M.D. Ga. L.B.R. 1007-1(f).  However, to be consistent with the bankruptcy code, the Court reads the local rule as simply silent on the continuing statutory duty to disclose after the completion of the payment plan and not as altering Eleventh Circuit precedent that the duty persists during the pendency of the bankruptcy case.  *See Burnes*, 291 F.3d at 1287-88; *Robinson*, 595 F.3d at 1274-75.

[7] There is no dispute that Marshall had knowledge of his potential claims during bankruptcy.

In arguing the intent prong, all Parties rely on *Robinson v. Tyson Foods, Inc.* There, the plaintiff, while in the middle of her bankruptcy plan, filed an employment discrimination claim against the defendant nine months before she paid off her debt in full and received her discharge in bankruptcy. *Id.* at 1272. However, she never disclosed this claim to the bankruptcy court. *Id.* at 1273. Even before the cause of action arose, the plaintiff had a history of not making required disclosures to the bankruptcy court. *Id.* at 1276. She also struggled to stay current on her plan payments and even defaulted. *Id.* at 1272, 1276. The district court found that these circumstances supported the finding of an inference of a motive to conceal her claim because of "[t]he questions regarding repayment" and the chance the plaintiff could have settled during the nine-month window and kept the proceeds for herself. *Id.* at 1275-76. Even though the plaintiff eventually completed her payment plan, the Eleventh Circuit concluded the district court's finding of intent was not clearly erroneous and upheld its application of judicial estoppel. *Id.* at 1272, 1275.

The Court emphasizes that the Eleventh Circuit in *Robinson* simply reviewed the district court's factual findings on intent for clear error and assessed the application of judicial estoppel for abuse of discretion in light of the particular circumstances of the case. The court in *Robinson* did not establish a per se or categorical rule that if a party fails to disclose his claims to the bankruptcy court, it necessarily follows that judicial estoppel is warranted. *Robinson* does not disturb Eleventh Circuit precedent that failure to disclose may be inadvertent, as opposed to an intentional contradiction, when a party lacks either knowledge or a motive for concealment. *See Barger*, 348 F.3d at 1295-96. Again, *Robinson* simply held that the district court's finding of an inference of a motive

for concealment was not clearly erroneous given the legitimate concerns surrounding the plaintiff's intent in her bankruptcy proceeding. Accordingly, despite Marshall's failure to disclose the FELA claims to the bankruptcy court, the conclusion reached in *Robinson* does not require the same conclusion here. Rather, the Court makes its own determination regarding Marshall's intent based on the record before it, "giv[ing] due consideration to the circumstances of this particular case." *Burnes*, 291 F.3d at 1285.

The Court makes its determination regarding Marshall's intent based on the following evidence. Marshall and his wife were Chapter 13 debtors with a confirmed plan that provided for 20% repayment of unsecured claims. (Docs. 41, ¶ 2; 44, ¶ 6). They never missed a payment and had made all payments by October 7, 2009, before the potential FELA claims arose on November 8, 2009.[8] (Doc. 41, ¶ 4). On October 8, 2009, the Marshalls received a copy of a letter from their trustee informing Mrs. Marshall's employer that it no longer needed to take out deductions from her paycheck.[9] (Docs. 40, ¶¶ 4, 6; 42, ¶¶ 4, 6; 40 at 3). Based on their payments being completed and deductions no longer being taken from Mrs. Marshall's paycheck, the Marshalls understood all obligations to the bankruptcy court to be over as soon as the last payment was made. (Docs. 40, ¶¶ 4, 6; 42, ¶¶ 4, 6). The Marshalls received their bankruptcy discharge in February 2010, but during discovery in the present lawsuit, Marshall responded to the Defendant's interrogatory that he received his discharge in October 2009. (Doc. 28-2 at 4-5, 16). Upon learning of the correct discharge date in

---

[8] The Defendant does not dispute these facts in its reply motion or suggest any fact to the contrary.

[9] The Court also notes that at the hearing on the motion for summary judgment, Marshall's counsel conceded that Marshall was unaware of the local bankruptcy rule at the time regarding amending asset schedules. *See supra* note 6. Accordingly, the local bankruptcy rule has no bearing on the Court's determination of Marshall's intent.

the Defendant's motion for summary judgment, Marshall's counsel ensured that his bankruptcy case was reopened and his asset schedules amended to include the present action.  (Docs. 30-1, ¶ 4; 38, ¶ 12; 39, ¶¶ 7-12).

Based on the foregoing, the Court, in this summary judgment posture, cannot find that Marshall intended to make a mockery of the judicial system by his non-disclosure.  Unlike in *Robinson*, there were no "questions regarding [Marshall's] repayments" or any other concerns surrounding Marshall's bankruptcy at the time of non-disclosure to support a finding of an inference of the requisite intent.  Rather, given that Marshall never missed a payment, completed them all, and received a letter that deductions were no longer being taken out of Mrs. Marshall's paycheck before the FELA claims arose, there, at the least, exists a genuine issue of material fact whether his non-disclosure was inadvertent as opposed to a purposeful contradiction.  *See Crankshaw v. CSX Transp., Inc.*, 2013 WL 5276573, at *3 (E.D. Tenn.) (concluding a plaintiff, who did not disclose his claims to the bankruptcy court, was not judicially estopped because a genuine issue of fact existed regarding intent where the claims arose after all plan payments had been made).

The Defendant argues that Marshall had a motive to conceal the claims because the bankruptcy plan only required 20% repayment to nonpriority unsecured creditors, leaving unsecured claims worth $18,000 unpaid by the plan.  Thus, he stood to benefit from his non-disclosure by potentially keeping this amount, should he prevail in this lawsuit, rather than pay these creditors.  (Doc. 44 at 3-4).  However, the fact that Marshall had a plan that required less than 100% repayment of unsecured claims but was completed before the FELA claims arose does not compel the Court to find an

inference of a motive to conceal his claims.[10]  *See Ajaka*, 453 F.3d at 1346 n.8 ("[B]ecause we are convinced that there is insufficient proof of [the plaintiff's] intent to support the district court's grant of summary judgment to the Defendants, the fact that there may have been a motive to conceal the … claim … is not dispositive.").  The Defendant further argues that by reopening his bankruptcy case and amending his schedules, Marshall himself acknowledges that his disclosure would have affected his bankruptcy case.  (Doc. 44 at 4-5).  *See Burnes*, 291 F.3d at 1288.  Although the Eleventh Circuit has viewed a party's reopening his bankruptcy case and amending his schedules unfavorably in cases involving the federal doctrine of judicial estoppel,[11] these actions also do not compel the Court to find an inference of a motive.  The Court must still look at the circumstances surrounding this case, and these circumstances present a genuine dispute whether Marshall's failure to amend his asset schedules was an "unthinking or confused blunder" or "cold manipulation."  *Ajaka*, 453 F.3d at 1345 n.7, 1346 (citation and internal quotation marks omitted).

---

[10] In making its argument, the Defendant overlooks the fact that the FELA claims arose after all plan payments had been made, and thus the plan could not have been modified at the time of non-disclosure pursuant to 11 U.S.C. § 1329.  This section provides that the plan may be modified at any time "after the confirmation of the plan but before the completion of payments."  11 U.S.C. § 1329; *see In re Meza*, 467 F.3d 874, 878 (5th Cir. 2006) ("It is largely undisputed that a plan cannot be modified once all payments have been made.  If a trustee could amend a Chapter 13 plan after the debtor completes his or her payments to the trustee, the mandatory nature of the discharge provision [11 U.S.C. § 1328] would be eviscerated." (citations and internal quotation marks omitted)).  After confirmation and before plan completion, certain creditors, the trustee, or debtors may seek modification to "increase or reduce the amount of payments on claims of a particular class provided for by the plan."  11 U.S.C. § 1329(a)(1).  However, because the FELA claims arose after Marshall had completed the payments, the plan could not have been modified at the time of Marshall's non-disclosure to increase the distribution amount to the nonpriority unsecured creditors subject to 20% repayment.  *Cf. In re Waldron*, 536 F.3d at 1240, 1245 (reasoning that "disclosure of postconfirmation assets gives ... creditors a meaningful right to request, under section 1329, a modification of the debtor's plan to pay his creditors" where the assets arose *before* the completion of the payment plan); *De Leon v. Comcar Ind., Inc.*, 321 F.3d 1289, 1291 (11th Cir. 2003) ("A financial motive to secret assets exists under Chapter 13 … because the hiding of assets affects the amount to be discounted and repaid.").

[11] *Compare Burnes*, 291 F.3d at 1288, with *supra* note 3.

Therefore, the Court, in its discretion, does not invoke judicial estoppel because it cannot find, based on the evidence presently before it, that Marshall intended to make a mockery of the judicial system.  Given there remains a genuine issue of material fact regarding Marshall's intent, the Defendant is not entitled to summary judgment on the basis of judicial estoppel.[12]  The Parties are instructed to brief within 14 days of this order where they believe the Court should go from here on this issue of intent, including, but not limited to, a discussion of whether either party contends the issue should be submitted to a jury, whether the issue is appropriate for a bench trial, or whether the issue is now resolved.

### C. Roadway Worker Protection Regulations

To the extent Marshall asserts negligence per se for the Defendant's alleged violations of the Roadway Worker Protection ("RWP") regulations, the Defendant alternatively moves for partial summary judgment on such a claim.[13]  The Defendant emphasizes that the express purpose of these regulations "is to prevent accidents and casualties caused by moving railroad cars, locomotives or roadway maintenance machines striking roadway workers or roadway maintenance machines."  49 C.F.R. § 214.301(a).  Because Marshall does not allege that such an accident occurred, the Defendant argues Marshall may not rely on alleged violations of the RWP regulations to establish negligence per se.

---

[12] The Defendant also contends summary judgment in its favor is appropriate because Marshall lacks standing to bring the lawsuit.  (Doc. 28-1 at 9-10).  However, "[a]s a debtor in Chapter 13 bankruptcy, [Marshall] retains standing to pursue legal claims."  *Pavlov v. Ingles Mkts., Inc.*, 236 F. App'x 549, 549 n.2 (11th Cir. 2007).  Accordingly, the Defendant is not entitled to summary judgment on this basis.

[13] Only at the hearing on the Defendant's motion for summary judgment did Marshall's counsel confirm that the Plaintiff is asserting negligence per se for alleged violations of RWP regulations.

The Defendant rests its argument on the common-law understanding of negligence per se, namely that liability may only be imposed when the injury is one which the statute was designed to prevent.  However, the Supreme Court expressly rejected the application of traditional negligence per se principles in FELA cases. *Kernan v. Am. Dredging Co.*, 355 U.S. 426, 432 (1958).  The Court emphasized that "it is clear that the general congressional intent [in FELA] was to provide liberal recovery for injured workers." *Id.*  Given this intent, the Court reasoned that the violation of a safety statute in FELA cases "creates liability … if the resulting defect or insufficiency in equipment contributes in fact to the death or injury in suit, without regard to whether the injury flowing from the breach was the injury the statute sought to prevent." *Id.* at 433; *see also Zimmerman v. Long Island R.R.*, 2 F. App'x 172, 175-76 (2d Cir. 2001) (holding testimony regarding the RWP regulations was "relevant and appropriate" even though the case involved tripping on brush near a track and not moving trains).

It is undisputed that Marshall's alleged injury did not involve moving trains or equipment on moving trains striking other equipment or workers.  However, to hold that the RWP regulations are, as a result, inapplicable applies the "common-law formulation of negligence per se that the Supreme Court rejected in *Kernan*." *Zimmerman*, 2 F. App'x at 175.  Rather, to establish negligence per se in a FELA case, Marshall must only prove that his injury was caused "in whole or in part" by the Defendant's violation of a safety statute regardless of whether the injury flowing from the violation was one the statute or regulation was enacted to prevent.[14]  *Id.* (quoting *Crane v. Cedar Rapids &*

---

[14] "The RWPR was promulgated under § 8 of the Rail Safety Enforcement and Review Act, 49 U.S.C. § 20142." *Zimmerman*, 2 F. App'x at 175.  Accordingly, it is clear the RWP regulations include safety provisions "specifically aimed at the railroad industry," and thus a violation may be used to establish negligence per se as long as causation is proven. *Ries v. Nat'l R.R. Passenger Corp.*, 960 F.2d 1156,

*Iowa City Ry. Co.*, 395 U.S. 164, 166 (1969) (internal quotation marks omitted)); *Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 87 (2d Cir. 2006) (emphasizing the plaintiff need only show that the employer's "negligence played any part, even the slightest, in producing the injury … for which damages are sought" (quoting *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957) (internal quotation marks omitted)).  Thus, it is clear that the Defendant is not entitled to summary judgment on Marshall's allegations of negligence per se simply because Marshall's injuries did not involve moving trains or equipment on moving trains striking other equipment or workers.  Accordingly, the Defendant is not entitled to partial summary judgment on the basis asserted.

### III.   CONCLUSION

For the foregoing reasons, the Defendant's motion for summary judgment or, alternatively, partial summary judgment is **DENIED**.  (Doc. 28).

**SO ORDERED**, this 10th day of June, 2015.

S/ Marc T. Treadwell
MARC T. TREADWELL
UNITED STATES DISTRICT COURT

---

1159 (3d Cir. 1992) ("It is well-settled that the FELA requires a finding of negligence per se when there has been a violation of a safety statute specifically aimed at the railroad industry.").